# Ellis *against* Baldwin.

If an administrator *de bonis non*, with a will annexed, whose wife is a legatee in the will, receive assets of the estate sufficient to pay the legacies, and die without settling any account of his administration, leaving his wife surviving him, it is such a reducing to possession of the choses in action of the wife, as will preclude a recovery by her after his death.

ERROR to the Common Pleas of *Dauphin* county.

The court below (Parsons, President) instructed the jury, that the facts of the case constituted in law such a reducing to possession by the husband of his wife's choses in action, as barred the plaintiffs' recovery in this action.

This suit was brought by Thomas Ellis, and Eleanor, his wife, late the wife of Christopher B. Baldwin, deceased, and daughter and legatee of George Whitehill, deceased, against John C. M'Allister, John Dowding, and William Putnam, executors of the said Christopher B. Baldwin, to recover a legacy bequeathed to the said Eleanor by her father, George Whitehill. John Whitehill, the son of George, the testator, and William Graydon,

I. — W

[Ellis v. Baldwin.]

were appointed by him the executors of his will. They had probate made of the same after his death, and obtained letters testamentary thereon. Afterwards, John Whitehill, one of the executors, died, and William Graydon, the other executor, was dismissed from his executorship; when letters of administration, *de bonis non cum testamento annexo*, were granted to Christopher B. Baldwin, who had previously become, and was then, the husband of the said Eleanor. George Whitehill, the testator, was at the time of his death a joint obligee with James Whitehill, who survived him, in three bonds upon Samuel A. Whitehill, John Wilson, and James Boyd. On the first of these bonds a suit was brought, and a judgment obtained for the amount of it in the lifetime of George Whitehill, which remained unpaid at his death. After his death, suits were brought upon the two remaining bonds, and judgments obtained thereon in favour of James Whitehill, the surviving obligee. But James Whitehill died without receiving any portion of the judgments; when letters of administration were granted upon his estate to his son James, who made himself a party to the judgments by suing out writs of *scire facias* thereon; and after obtaining an award of execution in his favour for the amount of each judgment, he sued out executions, by virtue whereof the moneys due on the judgments were levied by the sheriff, and brought into court. The amount was $17,276.33. It was paid over by the prothonotary of the court to James Whitehill, the administrator of James Whitehill, deceased, and Christopher B. Baldwin, who was administrator, at the time, of George Whitehill, deceased, and husband also of the said Eleanor, the legatee and one of the plaintiffs in this action, upon their giving to the prothonotary their joint receipt for the same, signed by them without designating themselves as bearing any official character whatever. The money, strictly in law, however, was all coming, in the first instance, to James Whitehill, as the administrator of James Whitehill, deceased, who had been the surviving obligee in the bonds; and from him, after being so received, a certain portion thereof was coming to Christopher B. Baldwin, as administrator, with the will annexed, of George Whitehill, the other obligee in the bonds. Christopher B. Baldwin accordingly received $6528.15 of it, as the portion coming to him in his character as administrator. The plaintiff in this action, in right of his wife, claims to recover the one-third of this sum, as a legacy bequeathed to her by her father, George Whitehill. By his will, one-third of it was coming to her, one-third to the representative of her brother John, and the remaining third of it to the representative of her mother, Abigail Whitehill. Abigail Whitehill, however, before her death, made her last will and testament, whereby she bequeathed one thousand dollars to the wife of the plaintiff, together with the one-half of the residue of her estate. When Christopher B. Baldwin re-

[Ellis v. Baldwin.]

ceived the $6528.15, he was also the administrator, *de bonis cum testamento annexo*, of Abigail Whitehill, and as such he was entitled to retain and dispose of her one-third thereof according to her will. By her will, one thousand dollars was coming in the first place out of it to his then wife, now wife of the plaintiff in this action, upon which he, Baldwin, on her behalf claimed interest, amounting to $532.68; and in the second place, one half of the residue, which was $321.68½, making in the whole $1854.36½, coming to the plaintiff's wife, then the wife of Christopher B. Baldwin, out of Abigail Whitehill's one-third of the $6528.15. This sum of $1854.36½, added to the one-third of the $6528.15, coming to C. B. Baldwin's wife, under the will of her father, forms an aggregate of $4030.41½. This aggregate being deducted from the $6528.15, left a remainder of $2497.73½, which Christopher B. Baldwin paid over to Mrs Piper, the widow of John Whitehill, who was entitled to receive it as his representative, he having had a right thereto in his lifetime, under the wills respectively of George and Abigail Whitehill. Christopher B. Baldwin used all the money received by him as the administrator, *de bonis non cum testamento annexo*, of George Whitehill, after paying Mrs Piper her proportion of it, for he had none on hand, as it seems, at the time of his death. He died largely indebted, even beyond the value of his estate; and the contest here is therefore between his creditors and the plaintiff in right of his wife; nor is there any money to pay either of them, except what has been raised from the sale of his estate, made since his death.

*J. A. Fisher*, for plaintiff in error, cited 1 *Willms. Exors.* 557; 32 *Law Lib.* 129, 132, 139; 2 *Kent. Com.* 138; 5 *Vez.* 515; 12 *Vez.* 497; 16 *Vez.* 413; 3 *Dess.* 155; 5 *Johns. Ch.* 196; *Ashmead* 323; 9 *Watts* 542; 4 *Rawle* 478; 5 *Whart.* 142; 2 *Whart.* 201; 11 *Serg. & Rawle* 325; 1 *Rawle* 279; 2 *Ball & Beatty* 424; 2 *Serg. & Rawle* 493; *Clancy* 132.

*Hamilton Alricks* and *M'Cormick*, for defendants in error, cited 1 *Bos. & Pul.* 294; 3 *Monroe* 93; 2 *Dess.* 261; 1 *Hill's Ch. Rep.* 324, 332; 1 *Yerger* 413.

The opinion of the Court was delivered by
KENNEDY, J. — That Christopher B. Baldwin had a right to make the money received and retained by him, after paying Mrs Piper her proportion of it, his own, is admitted, and at any rate could not well be contested. But it is argued on behalf of the plaintiffs, that he must be regarded as having received the money in the character of a trustee, or as administrator of the estate of George Whitehill, and not by virtue of any marital right vested in him at the time. And therefore his receipt of the money cannot be considered such a reduction of it into his possession as

[Ellis v. Baldwin.]

would deprive his wife of her right to it in case she survived him. That the money cannot be looked upon as having been received by him otherwise; because he had no power or right to demand and receive it in any other right than that of administrator. If his wife had been sole at the time, she could not have demanded or received it until after it had come first into his hands as administrator. Then, but not before, she could have asserted her right to it, and compelled the payment of it by him, upon giving the requisite security to refund whatever of it might thereafter be wanting to pay debts of the testator. But his being invested with the right of his wife as her husband, as well as that of administrator, made no difference; for it is a rule, that if two distinct rights or capacities exist in the same person, they shall be considered the same as if they existed in two different persons; and if he performs an act, which it is only competent for him to do, acting in one of those two capacities, without signifying or declaring in which it is that he does the act, it shall be referred to that which will make it lawful, and render it effectual. This reasoning, so far as regards the mere receipt of the money by Christopher B. Baldwin, may be all correct enough. And had he retained it in his possession, without using it, until his death; or had he put it out on interest expressly for the use of his wife, I would not say but her right to receive the money in such case would have survived. *Baker* v. *Hall*, (12 *Vez.* 497.); but see also, *Wildman* v. *Wildman*, (9 *Vez.* 174), where his Honour, the Master of the Rolls, took a distinction between a transfer of stock and the payment of money, saying, " That the interest of stock was, properly, nothing but a right to receive a perpetual annuity, subject to redemption; a mere right, therefore, and the circumstance that the government was the debtor, made no difference; a mere demand of dividends as they became due, having no resemblance to a chattel moveable or coined money, capable of possession and manual apprehension." But the money was not retained by the husband in the present case, nor put out by him to interest for the use of his wife; nor anything of the sort done by him, from which it is possible to infer that he did not intend to bar her thereafter from asserting her right to it by survivorship. On the contrary, he appropriated the whole of the money to his own use; and, in truth, used and treated it as his own in every respect. Thus he clearly reduced it into his possession, and made it his own absolutely to all intents and purposes. It was impossible for him to have done more than he did to effect this end. The wife, therefore, after her husband had so converted the money to his own purposes, could have no possible claim, in future, to it founded upon a right by survivorship.

Judgment affirmed.